UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SCOTT PHILLIP LEWIS,

                              Plaintiff,                    8:24-cv-68 (BKS/DJS)

v.

REDLINE HOCKEY, LLC d/b/a USA Hockey Store and
USA Spirit Shop, USA
HOCKEY INC., MATTHEW NYMAN
and MICHAEL NYMAN,

                              Defendants.

---

**Appearances:**

*Plaintiff pro se*:
Scott Phillip Lewis
Lake Placid, NY 12946

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

Plaintiff Scott Phillip Lewis commenced this proceeding on January 15, 2024, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 50 of the New York Civil Rights Law, and for defamation. (Dkt. No. 1). Plaintiff also sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). This matter was referred to United States Magistrate Judge Daniel J. Stewart. (*Id.*). On January 23, Plaintiff filed a request that proposed summonses be issued, which was subsequently denied. (Dkt. Nos. 5–6). Following the denial, Plaintiff filed a motion for reconsideration and a supporting memorandum of law. (Dkt. Nos. 7–8). On February 20, 2024, Magistrate Judge Stewart granted Plaintiff's application to proceed IFP, denied Plaintiff's motion for reconsideration, and issued a Report-

Recommendation, recommending that Plaintiff's complaint be dismissed with leave to amend. (Dkt. Nos. 9–11). Plaintiff filed a motion on February 28 to waive PACER fees which Magistrate Judge Stewart denied. (Dkt. Nos. 12–13). Plaintiff has timely filed his objections to the Report-Recommendation and has appealed the orders denying his request for the issuance of the summonses and denying his motion to waive PACER fees. (Dkt. Nos. 14–16). For the reasons set forth below, the Report-Recommendation is adopted and Plaintiff's appeals are denied.

## II.    STANDARD OF REVIEW

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections "must be specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Kruger*, 976 F. Supp. 2d at 296 (citation omitted).

A magistrate judge may issue orders regarding nondispositive pretrial matters, and the district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "An order is clearly erroneous when the reviewing

court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (citations and internal quotation marks omitted). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)).

### III.  DISCUSSION

#### A.  Objections to the Report-Recommendation

Plaintiff has not raised any objections to the facts or the legal framework set forth in the Report-Recommendation. (*See* Dkt. No. 15). The Court therefore adopts Magistrate Judge Stewart's summary of the factual background and applicable law and presumes familiarity with those matters for the purposes of this decision.

##### 1.  ADA

Plaintiff alleges that Defendants violated his rights under the ADA by discriminating against him because he is disabled. (Dkt. No. 1, at 4–5). Magistrate Judge Stewart recommended Plaintiff's ADA claim be dismissed with leave to amend because "[t]he Complaint does not allege that Plaintiff filed a discrimination complaint with the EEOC and does not provide a copy of a right to sue letter." (Dkt. No. 11, at 4). Plaintiff has objected to the dismissal on the basis that "[t]he Seventh Amendment extends the right to a jury trial in Federal civil cases." (Dkt. No. 15, at 3).

As an initial matter, the right to a jury trial as guaranteed by the Seventh Amendment is not violated by requiring a plaintiff to administratively exhaust his claims before bringing them

to federal court. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he Seventh Amendment's guarantee of the right to the ultimate determination of issues of fact by the jury does not extend to the threshold issue[s]," like administrative exhaustion, "that courts must address to determine whether litigation is being conducted in the right forum at the right time." (citations and internal quotation marks omitted)). While Plaintiff's objection is meritless, having reviewed the issue regarding exhaustion of administrative remedies *de novo*, the Court concludes that it would be error to dismiss Plaintiff's ADA claim for failure to plead exhaustion of administrative remedies or receipt of a right to sue letter. "Administrative exhaustion in the . . . ADA context 'is not a jurisdictional [prerequisite], but only a precondition to bringing [suit] . . . that can be waived by the parties or the court.'" *Anderson v. City of New York*, No. 22-cv-3990, ---F. Supp. 3d ----, 2024 WL 183103, at *6 n.6, 2024 U.S. Dist. LEXIS 8834, at *13 n.6 (S.D.N.Y. Jan. 17, 2024) (quoting *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016)); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (concluding the district court's *sua sponte* dismissal of the plaintiff's discrimination claims "for failure to exhaust, or plead other facts that would relieve him of the obligation to file a complaint with the EEOC," was erroneous, explaining that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense."). Consequently, a Plaintiff's failure to allege sufficient facts regarding exhaustion is not *necessarily* fatal to Plaintiff's claim.

However, Plaintiff's claim remains insufficient in other ways. A *prima facie* case of disability discrimination under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential

4

functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of his disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)). While "a plaintiff alleging disability discrimination is not required to plead a *prima facie* case" at the pleadings stage, the plaintiff still must "give plausible support to a minimal inference of discriminatory motivation." *Id.* at 487 (internal citation marks omitted) (quoting *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order)); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she "suffered [an] adverse employment action because of [her] disability.").

Here, Plaintiff has not sufficiently alleged facts supporting the minimal inference required. First, Plaintiff has not plausibly alleged he is disabled within the meaning of the ADA. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's assertions that he "had been diagnosed with ADHD" and that he "was subsequently diagnosed with PTSD after employment ended," (Dkt. No. 1, ¶ 26), without additional factual allegations to show how a major life activity is or was substantially limited by such conditions is not enough to satisfy his pleading burden under either prong (A) or prong (B) of the definition. *See e.g.*, *Rodriguez v. Verizon Telecom*, No. 13-cv-6969, 2014 WL 6807834, at *3–5, 2014 U.S. Dist. LEXIS 167833, *9–12 (S.D.N.Y. Dec. 3, 2014) (finding the plaintiff failed to plead his alcohol and drug addictions constituted a disability or a record of disability under the ADA because he did not

allege any facts pertaining to how these conditions "substantially limit" or "substantially limited a major life activity"). And Plaintiff has not alleged facts that suggest any Defendant perceived him as disabled, such that he would meet the definition under prong (C). *See Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (explaining that whether a plaintiff is regarded as disabled "turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability" (citation omitted)).

Second, Plaintiff has not pled that he experienced an adverse employment action. An adverse employment action is defined "as a 'materially adverse change' in the terms and conditions of employment," for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citations omitted). Plaintiff alleges that he "encountered hostile situations in the workplace," including that Defendant Matthew Nyman "responded aggressively" to Plaintiff in a conversation regarding how Plaintiff should fill out his tax forms. (Dkt. No. 1, ¶ 12[1]). Plaintiff states that "[w]hile Plaintiff was seeking partnership opportunities, he ended up working a minimum wage job for more hours than initially agreed" and that he was "put in what was perceived to be manufactured situations for entertainment purposes rather than put in any business setting concurrent to prior experience." (*Id.* ¶¶ 27–28). None of these events constitute adverse employment actions. *See Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 495–96 (E.D.N.Y. 2019) ("An employer's behavior does not constitute an adverse employment action because the employee sustained some generalized harm; the harm must be related to the

---

[1] Plaintiff's Complaint contains two paragraphs numbered "12." (*See* Dkt. No. 1, at 2–3). This citation is to the second paragraph "12." (*See id.* at 3).

employee's terms and conditions of employment." (citations omitted)). Moreover, Plaintiff does not provide any facts that would indicate that any of these events occurred *because* Plaintiff was disabled within the meaning of the ADA. *See, e.g.*, *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (finding plaintiff had not sufficiently pled claims of religious and disability discrimination in part due to lack of allegations "that her supervisors or other management . . . made any statements about her religion or her disability, let alone statements indicating that those characteristics played a role in" the alleged adverse employment actions).

Plaintiff also cites 42 U.S.C. § 12112(b)(5)(A),[2] suggesting he may be claiming he was not provided a reasonable accommodation in accordance with the ADA. (Dkt. No. 1, ¶ 24; *see also id.* ¶ 36 ("Instead of providing accommodations in accordance to [sic] the Americans with Disabilities Act, Defendant used Plaintiff as a prop for entertainment purposes.")). But Plaintiff does not allege any facts suggesting he requested an accommodation or was denied one.

Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's ADA claim should be dismissed with leave to amend.

### 2. Right to Privacy

Plaintiff alleges that Defendants violated Section 50 of the New York Civil Rights Law by recording him without consent "for entertainment purposes." (*Id.* ¶¶ 34–36). The Magistrate Judge recommended dismissing this claim because "[w]hile he alleges that video surveillance cameras in the store were used to film him, he does not allege that his name, portrait, or voice was used for any advertising purposes" and instead "specifically avers that the footage was used for the entertainment of the employees." (Dkt. No. 11, at 5). Plaintiff objects to the dismissal

---

[2] Plaintiff cites the statutory provision as "42 U.S.C. § 12112(5)(A)," (Dkt. No. 1, ¶ 24), but it is clear from the text that Plaintiff is referring to 42 U.S.C. § 12112(b)(5)(A).

7

recommendation, differentiating between the Magistrate Judge's characterization "that the footage was used for entertainment purposes" and his allegation that "he was used 'as a prop for entertainment purposes.'" (Dkt. No. 15, at 3). Plaintiff argues that the Magistrate Judge incorrectly assumed "the footage was used solely by 'the employees'"; that "Plaintiff is unaware of any safeguards in place for which employees have access to the surveillance camera footage at the USA Hockey Store in Lake Placid, NY and how these recordings were being safeguarded to protect employees [sic] privacy"; that "Plaintiff was required to wear USA Hockey clothing so any unauthorized access to Defendants constitutes an advertisement"; and that "[i]t can be liberally construed that Plaintiff's allegations that he was used as 'a prop for entertainment purposes' shows that Plaintiff was used for monetary gain for entertainment or trade purposes." (*Id.* at 3–4).

Section 50 of the New York Civil Rights Law states that: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor." "Section 51 creates a cause of action for the invasion of the 'right to privacy' granted by Section 50." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) (citing *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 571 n.6 (1977)). "To maintain a civil action under section 51, a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent." *Id.* (citing *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985)).

As Magistrate Judge Stewart correctly stated, Plaintiff has not alleged any facts that suggest his name, portrait, picture, or voice were used for advertising or trade purposes.

8

Plaintiff's objections amount to an argument that video of him *could* have been used for advertising or trade purposes and that he had unanswered questions regarding who had access to the video. This is different from actually alleging such events occurred and as such is insufficient to state a claim. *See Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that with regards to a complaint, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" (citation omitted)).

Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's claim of a violation of his right to privacy should be dismissed with leave to amend.

### 3. Defamation

Plaintiff alleges that Defendant Matthew Nyman made a defamatory statement by telling "the Village of Lake Placid Police Department that Plaintiff 'harassed' him." (Dkt. No. 1, ¶ 39). The Magistrate Judge found that "Plaintiff's brief allegations" lacked the "level of specificity" required to plead the elements of a defamation claim and recommended dismissal. (Dkt. No. 11, at 6). Plaintiff objects to the Magistrate's Judge's finding regarding the lack of specificity. (Dkt. No. 15, at 4–5).

"Under New York law, to state a claim for defamation, a plaintiff must allege '(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.'" *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 169–70 (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

Magistrate Judge Stewart's assessment regarding the specificity of Plaintiff's defamation claim was correct. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tannerite Sports LLC, v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff has not pled factual allegations sufficient to indicate fault and falsity of a defamatory statement, but has instead alleged little "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted); *see also* Dkt. No. 1, ¶¶ 39 ("Matthew Nyman made a statement to the Village of Lake Placid Police department that Plaintiff 'harassed' him."), 41 ("Matthew Nyman made false statements knowingly and maliciously with intent to injure Plaintiff.")). While Plaintiff does allege that Defendant "Nyman knew that Plaintiff was seeking clarification over the use of cameras as previously discussed," (*id.* ¶ 40), such a statement by itself contains too little information to evaluate whether Defendant Nyman's statement that Plaintiff "harassed" him was false. *See Tannerite Sports LLC*, 864 F.3d at 247 ("Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true."). Finally, Plaintiff does not plead any facts suggesting special damages or per se actionability. *See Kesner*, 515 F. Supp. 3d at 171 ("Special damages are those that involve the 'loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation.'" (citation omitted)); *id.* ("Statements that are defamatory per se 'are actionable without pleading and proof of special damages,'" including "those that 'charge the plaintiff with a serious crime' and those that 'tend to injure another in his or her trade, business or profession.'" (citations omitted)).

Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's defamation claim against Defendant Nyman should be dismissed with leave to amend.

### B. Appeals of Magistrate Judge Decisions

Plaintiff also appeals the Magistrate Judge's decisions to: (1) deny Plaintiff's requests to issue summonses; and (2) deny Plaintiff's motion to waive PACER fees. (Dkt. Nos. 14, 16). The Court finds that neither decision is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

#### 1. Denial of Request to Issue Summonses

On January 23, 2024, Plaintiff filed a letter motion requesting the issuance of four proposed summonses pursuant to Rule 4(b) of the Federal Rules of Civil Procedure. (Dkt. No. 5). Plaintiff asserted that the summonses should be issued as the Complaint had been filed and "[t]he summons [sic] have been properly completed and presented to this Court," arguing that "[t]he pending Motion for Leave in Forma Pauperis in this matter does not impact the issuance of a summons." (Dkt. No. 5, at 1). In an Order entered on January 25, 2024 ("January Order"), Magistrate Judge Stewart denied Plaintiff's request as "premature" because the Court had not yet ruled on Plaintiff's motion for IFP status or completed an "initial review of the Complaint[] pursuant to 28 U.S.C. § 1915." (Dkt. No. 6, at 3). Magistrate Judge Stewart explained that for purposes of Rule 4(b), a complaint is considered filed "when IFP status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court." (*Id.* (quoting *Truitt v. Cnty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Plaintiff appeals this decision on the grounds that refusing to issue the summonses violates Rule 4 and constitutes unequal treatment under the Fifth Amendment. (Dkt. No. 14, at 1–4).

Here, the Magistrate Judge correctly applied the law. Courts in the Second Circuit have found that a "[p]laintiff's action was not properly filed until this Court granted his IFP application." *Perkins v. Napoli*, No. 8-cv-6248, 2012 WL 5464607, at *3, 2012 U.S. Dist. LEXIS 160534, at *9 (W.D.N.Y. Nov. 8, 2012) (citing *Romand v. Zimmerman*, 881 F. Supp. 806, 809

11

(N.D.N.Y. 1995)). Therefore, as Plaintiff's IFP application was still pending at the time Plaintiff requested the issuance of the summonses and the filing fee had not been paid, Magistrate Judge Stewart's finding that Plaintiff's Complaint had not yet been filed for purposes of Rule 4(b) was neither clearly erroneous nor contrary to law. Furthermore, treating litigants differently based on IFP status does not implicate a suspect class, and thus does not constitute a Fifth Amendment violation. *See Dicara v. Conn. Educ. Dep't*, No. 8-cv-627, 2008 WL 5083622, at *2, 2008 U.S. Dist. LEXIS 96372, at *5 (D. Conn. Nov. 26, 2008) ("[P]overty is not a suspect classification for the purposes of equal protection analysis." (citations omitted)). Plaintiff's appeal of the January Order is therefore denied.

### 2. Denial of Motion to Waive PACER Fees

On February 28, 2024, Plaintiff filed a motion to waive PACER fees. (Dkt. No. 12). Plaintiff asserted two arguments in support of his motion. First, Plaintiff argues that because Magistrate Judge Stewart failed to include the docket number for a case cited in the January Order as "Arroyo v. Georgia, 2023 WL 4539770, at *4 (N.D. Ga. May 30, 2023[)]", Plaintiff had to "search[] for an unknown docket number . . . accruing fees in the process." (Dkt. No. 12, at 1–2 (quoting Dkt. No. 6, at 3)).  Second, Plaintiff argued that his PACER fees should be waived due to his indigence, noting that his IFP application had been granted on February 20, 2024. (*Id.* at 2–3 (citing Dkt. No. 9)). On March 6, 2024, Magistrate Judge Stewart issued a text order denying Plaintiff's motion. (Dkt. No. 13 ("Text Order denying . . . Motion to Waive PACER Fees.")). Plaintiff appeals the Magistrate Judge's denial of his motion on the basis that he has shown good cause to waive PACER fees and that the text order, issued without further explanation, was "not appropriate" and "has created the appearance that the Magistrate Judge will not provide rights to the poor." (Dkt. No. 16, at 2–4).

As Plaintiff himself is aware, (*see id.* at 1), a Magistrate Judge is not required to issue a written order when ruling on non-dispositive matters, Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, *when appropriate*, issue a written order stating the decision.") (emphasis added).

Moreover, the decision itself is not clearly erroneous or contrary to law. PACER itself provides for "four automatic fee exemptions." *In re Club Ventures Investments LLC*, 507 B.R. 91, 99 (S.D.N.Y. 2014) (citation omitted); *see also* Options to Access Records If You Cannot Afford PACER Fees, https://pacer.uscourts.gov/my-account-billing/billing/options-access-records-if-you-cannot-afford-pacer-fees (last accessed Apr. 4, 2024) (allowing users to "access $30 or less worth of court records within a quarterly billing cycle," as well as court opinions for free). "[A] party seeking a discretionary exemption cannot rely on his *in forma pauperis* status alone. The party must demonstrate that an exemption beyond the four automatic exemptions 'is necessary . . . to avoid unreasonable burdens and to promote public access to information.'" *In re Club Ventures Investments LLC*, 507 B.R. at 99 (citation omitted). As Plaintiff failed to explain why the automatic exemptions are not sufficient for his purposes, the Court finds Magistrate Judge Stewart's denial of Plaintiff's motion for a waiver of PACER fees was neither clearly erroneous nor contrary to law and is therefore affirmed. *See Oliva v. Brockwood Coram I, LLC*, No. 14-cv-2513, 2015 WL 1966357, at *2, 2015 U.S. Dist. LEXIS 57215, at *3–4 (E.D.N.Y. Apr. 30, 2015) ("Because [the plaintiff] does not explain how that level of access is insufficient for his purposes, he falls short of establishing that the regular usage fee constitutes an unreasonable burden."). Plaintiff's appeal is therefore denied.

### IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 11) is **ADOPTED**; and it is further;

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with leave to amend; and it is further;

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further;

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Stewart for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 14) of the January Order (Dkt. No. 6) is **DENIED** in its entirety; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 16) of the order denying a waiver of PACER fees (Dkt. No. 13) is **DENIED** in its entirety; and it is further;

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>April 17, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge